Filed 2/6/19; Certified for Publication 3/6/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BRADLEY T. JUEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAIN PINEL REALTORS, INC. et al.,<br><br>    Defendants and Appellants. | H043230<br>(Santa Clara County<br>Super. Ct. No. 1-15-CV-275396) |

Defendants appeal from an order denying their motions to compel arbitration, arguing that the trial court erred by finding no enforceable arbitration agreement. We will affirm the order. For the reasons stated here, defendants have failed to show through custom and habit evidence that the broker had initialed the arbitration clause on the original residential listing agreement, or that the defendant realtor had assented to arbitration through other conduct.

## I.     BACKGROUND

Plaintiff engaged Alain Pinel Realtors, Inc. (Pinel) to sell his Danville home in 2008. In 2015 he filed a putative class action lawsuit on behalf of California residents who between August 2004 and July 2011 had used Pinel in a transaction to buy or sell a home in California and had utilized TransactionPoint, a real estate software program developed by Fidelity National Financial, Inc. Plaintiff sued Pinel, certain managing

owners and brokers,[1] and Fidelity subsidiaries alleging breaches of fiduciary duties, aiding and abetting, violations of Civil Code section 1710 and Business and Professions Code section 17200, constructive fraud, and unjust enrichment. Plaintiff alleged Pinel had entered into unlawful sublicensing agreements with Fidelity subsidiaries Ticor Title Company of California, Fidelity National Home Warranty Company, and Chicago Title Company (the Fidelity defendants), allowing those entities to contract their settlement services to Pinel clients using TransactionPoint; during the class period Pinel had used the software to contract for real estate settlement and related services; and the Fidelity defendants paid unlawful sublicensing fees to Pinel in return for the TransactionPoint-generated business.

Pinel and all individual defendants except Mr. Profeta (the Pinel defendants) moved to compel arbitration in the trial court, relying on the arbitration clause (paragraph 19B) in plaintiff's residential listing agreement. Following that clause, the agreement contained a notice provision required by Code of Civil Procedure section 1298, subdivision (c) with spaces for the client's and broker's initials. (Unspecified statutory references are to the Code of Civil Procedure. We refer to section 1298, subdivision (c) as section 1298(c).) In support of their motion, the Pinel defendants produced a copy of the listing agreement signed by plaintiff and Pinel's listing agent, Sue Smith. The section 1298(c) notice on the copy showed plaintiff's initials, but the space for Pinel's initials was blank.

To establish that the original listing agreement had actually been initialed by Pinel, the Pinel defendants submitted the declaration of Lisa Crosby-Torres, the managing broker of Pinel's Danville office at the time the listing agreement was executed. Crosby-

---

[1] The individual defendants are Paul L. Hulme, William Don Faught, Robert G. Profeta, Kevin A. Cole, Albert L. Knapp, Jr., Robert Randolph Gerlach, and Ronald M. Gable. Rhesus, Inc. (a company conducting business using the name Alain Pinel Realtors) was also named as a defendant.

Torres explained that the files maintained by her office relating to the sale of plaintiff's home (including the original listing agreement) were destroyed in accordance with Pinel's normal document retention policy; that she had obtained a copy of plaintiff's listing agreement from Smith to support the Pinel defendants' arbitration demand; that at the time Pinel and plaintiff entered into the listing agreement it was Pinel's policy, custom, and practice to allow a client to elect whether to assent to the arbitration provision by initialing paragraph 19B; that "the policy in my office required an agent, like Smith, who had obtained a Residential Listing Agreement to promptly present the executed [agreement] to [Crosby-Torres] for [her] review"; and that in the event the client had initialed the arbitration provision, Crosby-Torres (rather than the listing agent) "would as a matter of policy and custom and practice adopt the election of the client and initial Paragraph 19B on behalf of [Pinel]."

Crosby-Torres further explained: "In the case of Plaintiff's Residential Listing Agreement, I would have, as a matter of policy and custom and practice, adopted his election of arbitration and initialed Paragraph 19B on behalf of [Pinel], and placed the original Residential Listing Agreement bearing Plaintiff's initials and my initials on Paragraph 19B in the file maintained by [Pinel] on the subject transaction." The declaration continued: "At the time of execution of the Residential Listing Agreement, and continuing to the present, it has been the policy to retain files relating to closed listing and sale transactions for a period of five (5) years. Escrow closed on Plaintiff's sale of the Subject Property on July 11, 2008. The file maintained by [Pinel] relating to the subject transaction, including the original Residential Listing Agreement bearing Plaintiff's initials and my initials on Paragraph 19B, was therefore destroyed in 2013 pursuant to the normal document retention policy of [Pinel]."

The Pinel defendants argued in the trial court that destruction of the original listing agreement bearing Crosby-Torres's initials did not preclude their arbitration demand because Crosby-Torres's declaration established through practice and custom that the

3

original listing agreement had been initialed by Crosby-Torres on behalf of Pinel. Alternatively, they argued (1) under the Federal Arbitration Act, parties to an executed listing agreement are not required to initial the arbitration provision, and (2) even if Pinel had not assented to the arbitration provision, the provision is enforceable against plaintiff under *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231 (*Bello*), which concluded that a mutual agreement to arbitrate was not required in order to enforce an arbitration clause in a real estate listing agreement against an assenting party. (*Id.* at pp. 238–241.)

After a hearing, the trial court issued a written order adopting its tentative decision denying the Pinel defendants' motion. The court concluded that the Crosby-Torres declaration failed to establish that Pinel had initialed the arbitration provision. It rejected the reasoning in *Bello*, and instead adopted the reasoning in *Marcus & Millichap Real Estate Investment Brokerage Co. v. Hock Investment Co.* (1998) 68 Cal.App.4th 83 to find no enforceable arbitration agreement. The court concluded that the language of the arbitration provision contemplated that the seller and broker mutually agree to the provision and that each indicate its assent by initialing the provision. Having failed to show that the broker had initialed the provision, the Pinel defendants failed to establish the existence of an enforceable arbitration agreement. The court also denied motions to compel arbitration by Rhesus, Inc. and Mr. Profeta (the Rhesus defendants) and the Fidelity defendants, as the existence of an enforceable arbitration agreement was necessary to their arbitration demands. All defendants have appealed from the trial court's order, and collectively briefed the matter in this court.

## II. DISCUSSION

### A. LEGAL STANDARDS

The validity of an arbitration agreement in California is determined by a petition or motion to compel arbitration. (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349; *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1670; Code Civ. Proc., § 1280 et seq.) Motions for arbitration are adjudicated summarily.

4

(§ 1290.2.) Factual issues may be submitted on declarations and affidavits, or by oral testimony in the court's discretion. (*Brookwood*, at p. 1670.)

A proceeding to compel arbitration " 'is in essence a suit in equity to compel specific performance of a contract.' " (*Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1040.) " '[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense[.]' " (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 172–173 (*Serafin*).)

An arbitration agreement must be in writing to be valid and enforceable. (§ 1281.) "[T]he existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357.) Whether a valid agreement to arbitrate was formed is reviewed de novo where the facts are not disputed. (*Serafin*, *supra*, 235 Cal.App.4th at p. 173.) We reject plaintiff's characterization of the trial court's conclusion that " '[t]he language of the provision shows that it was contemplated that both the seller and the broker must agree to arbitration and indicate that assent by writing their initials in the appropriate place' " as a factual determination reviewed for substantial evidence. The trial court's ruling was based on contract interpretation, not on any disputed facts. (*Romo v. Y-3 Holdings, Inc*. (2001) 87 Cal.App.4th 1153, 1158 [interpretation of written document is a question of law].) Nor was the court's oral comment that it was "odd … that the one copy of the contract that's produced isn't initialed … by the broker" an adverse credibility finding regarding Crosby-Torres, as urged by plaintiff. The court was commenting on the facts set forth in Crosby-Torres's declaration, not on the declarant's veracity.

Plaintiff's characterization of the trial court's conclusion that "the evidence does not show that anyone initialed the arbitration provision on behalf of [Pinel]" as a factual

5

determination reviewed for substantial evidence also is misplaced. "In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) "Thus, where the issue on appeal turns on the failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*Ibid*.)

## B.  CODE OF CIVIL PROCEDURE SECTION 1298

Section 1298 is a notice provision applicable to real estate contract arbitration. Section 1298, subdivision (a) applies to contracts to convey real property (such as residential purchase agreements between buyers and sellers), and subdivision (b) applies to contracts between principals and agents in real property sales transactions, including residential listing agreements. Section 1298(c) provides: "Immediately before the line or space provided for the parties to indicate their assent or nonassent to the arbitration provisions described in subdivision (a) or (b), and immediately following that arbitration provision, the following shall appear: [¶] 'NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES"

6

PROVISION.  IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.'  [¶] 'WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' " (Original capitalization.)

## C.  ANALYSIS

" 'A bilateral contract consists of mutual promises, made in exchange for each other by each of the two contracting parties.' " (*Sully–Miller Contracting Co. v. Gledson/Cashman Construction, Inc*. (2002) 103 Cal.App.4th 30, 36.)  The parties agree that the arbitration clause here is a bilateral agreement requiring the assent of both parties to be enforceable.  Defendants argue the Pinel defendants met their burden of showing through custom and habit evidence that Pinel had assented by initialing the provision. They argue in the alternative that Pinel was not required to initial the statutory notice provision to establish its assent to arbitration (and any contrary interpretation of the statutory language would violate the Federal Arbitration Act), and its assent was established through other conduct.  Plaintiff counters that the language of the arbitration clause as a whole, including the section 1298(c) notice and initialing provision, contemplates that the parties' assent be shown only by initialing in the indicated space, so that the failure of both parties to initial the provision renders the clause unenforceable.

### 1.  Habit or Custom Evidence to Establish Pinel's Initials

Evidence Code section 1105 provides "Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with

7

the habit or custom."[2]  Defendants argue that the arbitration clause was executed by Crosby-Torres and therefore enforceable because Pinel had established through custom and habit evidence that Crosby-Torres had initialed the notice provision.  While Crosby-Torres's declaration may have established through custom and habit that she initialed the arbitration notice provision in all residential listing agreements presented to her in which the provision had been initialed by the client, the declaration does not establish Crosby-Torres ever having received or reviewed plaintiff's listing agreement in particular.  The declaration states that Pinel's Danville office had a *policy* requiring its agents to present executed listing agreements to Crosby-Torres for review, but the existence of a policy is not evidence of adherence to the policy, and the Pinel defendants offered no evidence (directly or circumstantially through custom or habit) showing that Smith had actually presented plaintiff's listing agreement to Crosby-Torres.

The deficiency is similar to that discussed in *Hughes v. Pacific Wharf & Storage Co.* (1922) 188 Cal. 210 (*Hughes*).  The court in *Hughes* cited *Ford v. Cunningham* (1890) 87 Cal. 209, where proof of mailing was not established by a witness's testimony " 'that it was the general custom of his firm to place letters in a box in the store, from which they were taken to the post office.' " (*Hughes*, at p. 221.)  Missing was the additional showing "that it was the business of one of the employees to take the letters out of the box in which they had been placed and deposit them in the post office." (*Ibid*.)  The *Hughes* case was retried and the insufficient foundation cured by the testimony of an employee that he took all letters placed in the box in the store to the post office. (*Id*. at p. 222.)

---

[2] " ' "Habit" ' means a person's regular or consistent response to a repeated situation.  ' "Custom" ' means the routine practice or behavior on the part of a group or organization that is equivalent to the habit of an individual." ' " (*People v. Memro* (1985) 38 Cal.3d 658, 681, fn. 22, overruled on other grounds by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

Here, the evidence presented in the declaration is not of such character and weight as to compel a finding that Crosby-Torres initialed the listing agreement as a matter of law. (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) What is missing is either a statement from Crosby-Torres establishing that it was her habit to account for and review every listing contract executed by Smith, or a declaration from Smith stating that she either presented Crosby-Torres with plaintiff's listing agreement, or that as a matter of habit she presented all listing agreements to Crosby-Torres during the relevant time period. Without that evidence, the Pinel defendants failed to establish that plaintiff's listing agreement was among those habitually reviewed and initialed by Crosby-Torres. Accordingly, the trial court did not err by concluding that the Pinel defendants failed to prove "that in this particular instance [Crosby-Torres] initialed the arbitration provision."

### 2. Other Evidence of Pinel's Assent

Defendants argue that Pinel's assent to arbitrate may be established through conduct other than by initialing the listing agreement, and that Pinel's assent was shown here by Crosby-Torres's custom and habit declaration and Pinel invoking the arbitration process. It is unnecessary for us to decide the threshold issue—whether Pinel may assent to arbitrate through conduct other than initialing the arbitration clause—because even if we were to accept that position (a position we recognize was rejected by the trial court and is vigorously opposed by plaintiff), defendants have failed to establish Pinel's assent to the provision by other conduct. (*David v. Hermann* (2005) 129 Cal.App.4th 672, 685 [judgment or order may be affirmed on any theory of law].)

Defendants rely on *Serafin* to argue that mutual assent to arbitrate can be established even without initials through performance or an offer to perform, and that Pinel's assent is established as a matter of law from its demand to arbitrate. *Serafin* involved an arbitration agreement imposed as a condition of employment. The plaintiff employee signed the agreement which acknowledged his assent to the employer's policy to submit employment disputes to binding arbitration. (*Serafin*, *supra*,

9

235 Cal.App.4th at p. 171.) In rejecting the employee's argument that no evidence showed the employer agreed to be bound by the arbitration policy (the document required a signatory acknowledgment only by the employee) thereby rendering the agreement illusory and lacking consideration, the court observed that the presence or absence of a signature on a written arbitration agreement was not dispositive of the existence of the agreement. (*Id*. at p. 176.)

The *Serafin* court noted that an agreement to arbitrate can be confirmed, despite a missing signature, where, for example, conduct of the non-signing party implies ratification or acceptance of the provision. (*Serafin*, *supra*, 235 Cal.App.4th at p. 176.) Finding evidence of a mutual agreement, the court observed that the agreement was authored by the employer and printed on the employer's letterhead and the employer's later conduct (invoking the arbitration process to recover an alleged overpayment made to the employee and moving to stay the litigation and compel arbitration) further evinced an intent to be bound by the arbitration agreement. (*Ibid*.) The agreement could also be specifically enforced against the signing party under Civil Code section 3388. (*Serafin*, at pp. 176–177.)

*Serafin* is distinguishable and does not support the existence of mutual assent here. In *Serafin*, the employer's assent to the arbitration agreement was conveyed to the employee by the agreement itself. The arbitration agreement was part of a policy drafted by the employer on the employer's letterhead and accepted by the employee as a condition of employment. (*Serafin*, *supra*, 235 Cal.App.4th at pp. 174–175, 176.) In contrast, nothing in the record shows Pinel manifesting its assent to arbitrate at the time the contract was formed in April 2008 when the listing agreement was executed by plaintiff and Ms. Smith. Consent is an essential element of a contract. (Civ. Code, § 1550.) "[T]he consent of the parties to a contract must be communicated by each party to the other. [Citation.] 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning

10

of their words and acts, and not their unexpressed intentions or understandings.' " (*Serafin*, at p. 173.) Crosby-Torres's declaration may have established Pinel's *intent* to accept arbitration in all cases in which the client initialed the provision, but that intent was not outwardly manifested to plaintiff. Unlike the agreement in *Serafin*, the listing agreement used by Pinel was a standard industry contract published by a third party, and defendants do not argue that Pinel's mere use of the form manifested its assent to arbitrate.

While the employer's assent in *Serafin* was further shown by its demand to the American Arbitration Association made eight months after the employee was terminated and before litigation commenced (*Serafin*, *supra*, 235 Cal.App.4th at p. 171), here the demand for arbitration was made seven years after the listing agreement was executed and plaintiff's home sold, and five months after plaintiff filed his lawsuit. Significantly, Pinel's motion to compel arbitration comes after plaintiff filed his lawsuit, conduct which itself may constitute a revocation of any outstanding offer by plaintiff to arbitrate. (*Sully–Miller Contracting Co. v. Gledson/Cashman Construction, Inc.*, *supra*, 103 Cal.App.4th 30, 36 [offers given without consideration may be revoked at any time before acceptance].)

We recognize that in *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205 (*Basura*), a builder's failure to initial the section 1298(c) notice provision on a particular residential purchase agreement did not preclude the finding of an agreement to arbitrate. (*Basura,* at p. 1216.) The *Basura* court noted that the builder's intent to be bound by the arbitration clause in several contracts lacking its initials could reasonably be inferred from its initials on other contemporaneous contracts, and that the omissions could be attributed to clerical error. (*Ibid*.) Given the reasonable inference of the builder's intent to be universally bound by the arbitration provision, an evidentiary hearing was necessary to determine the builder's intent. (*Ibid*.) We do not read *Basura* as dispensing with the contract formation requirement that a party's assent be expressed to the other party. The

11

requirement was neither acknowledged nor discussed in the opinion. (*Leaming v. Municipal Court* (1974) 12 Cal.3d 813, 816 ["[C]ases are not authority for propositions not considered."].) The record here does not demonstrate that Pinel communicated its assent to mutual arbitration.

Defendants' reliance on Civil Code section 3388 as a means to enforce the arbitration agreement is also misplaced. That section provides: "A party who has signed a written contract may be compelled specifically to perform it, though the other party has not signed it, if the latter has performed, or offers to perform it on his part, and the case is otherwise proper for enforcing specific performance." Civil Code section 3388 is a specific performance remedy provision for breach of a contract enforceable in equity. The offer to *perform* referenced in the statute is not a substitute for the mutual assent required to *form* a bilateral contract; the remedy requires the existence of an agreement. (*San Francisco Hotel Co. v. Baior* (1961) 189 Cal.App.2d 206, 212–213 [contract must be sufficiently certain to be specifically enforced].)

### III.     DISPOSITION

The order denying defendants' motions to compel arbitration is affirmed. Costs on appeal are awarded to respondent.

_____

Grover, J.

**WE CONCUR:**


_____

Greenwood, P. J.



_____

Bamattre-Manoukian, J.



**H043230 -** *Juen v. Alain Pinel Realtors, Inc. et al.*

Filed 3/6/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BRADLEY T. JUEN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALAIN PINEL REALTORS, INC., et al.,<br><br>    Defendants and Appellants. | H043230<br>(Santa Clara County<br>Super. Ct. No. 1-15-CV-275396) |

BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted.  It is ordered that the opinion in this matter filed on February 6, 2019 shall be certified for publication.


Dated:                      _____

                                      Grover, J.


                                   _____

                                      Greenwood, P. J.


                                   _____

                                      Bamattre-Manoukian, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-15-CV-275396 |
| Trial Judge: | Hon. Peter H. Kirwan |
| Counsel for Plaintiff/Respondent:<br>Bradley T. Juen | Frances Alexander Bottini, Esq.<br>Yury A. Kolesnikov, Esq.<br>  Bottini & Bottini, Inc. |
| Counsel for Defendants/Appellants:<br>Alain Pinel Realtors, Inc., a California Corporation**,** Paul L. Hulme, Robert Randolph Gerlach, William Don Faught, Kevin A. Cole, Albert L. Knapp, Jr., and Ronald M. Gable | Stanley W. Smith, Esq.<br>  Niven & Smith |
| Counsel for Defendants/Appellants:<br>Ticor Title Company Of California, Fidelity National Home Warranty Co. and Chicago Title Co. | Michael James Gleason, Esq.<br>  Hahn, Loeser & Parks, LLP. |
| Counsel for Defendants/Appellants:<br>Rhesus, Inc., a California Corporation, and Robert G. Profeta, | David Hamerslough, Esq.<br>  Rossi, Hamerslough, Reischl & Chuck |

**H043230 -** *Juen v. Alain Pinel Realtors, Inc. et al.*

2