Filed 3/17/22  Herriott v. Wershoven CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PAULA HERRIOTT, | B312079 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20TRRO00821) |
| v. | |
| MARK WERSHOVEN et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Glenda Veasey, Commissioner.  Affirmed.

Paula Herriott, in pro. per., for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

\* \* \* \* \* \*

Paula Herriott (Paula)[1] appeals from the trial court's ruling denying her applications for civil harassment restraining orders against her uncle and two neighbors. The trial court's ruling was correct, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Paula, her mother, and her adult sister live in two neighboring apartment buildings in Hermosa Beach.

Both buildings are owned by a trust created by Paula's now-deceased father. The current trustee is Paula's uncle, Parker Herriott (Parker).

The administration of the trust is currently in litigation before the probate court. At some point in the past, Paula and her mother started collecting rent from the buildings' other tenants, and keeping that money for themselves rather than handing it over to the trustee. The probate court enjoined Paula's mother from engaging in such behavior.

Parker asked Mark Wershoven (Wershoven) and Laurie Thibodeoux (Thibodeoux) to do repairs for the buildings' tenants as well as to keep an eye on the buildings. Wershoven and Thibodeoux, who are dating, were Paula's upstairs neighbors. In July 2020, Paula asked Wershoven to repair a plumbing issue in her apartment; Thibodeoux accompanied Wershoven while he did the repairs. In August 2020, an unknown person turned down the thermostat for the hot water heater for Paula's building, and Paula and her mother suspected it was Wershoven. In

---

1    Because some of the individuals involved in this case share the same surname, we will use their first names; we mean no disrespect.

September 2020, Wershoven and Thibodeoux told Parker that Paula's mother was having awnings installed; Parker showed up to stop the installation because it was without his permission. In October 2020, Wershoven and Thibodeoux told Parker that Paula had hired tree trimmers; Parker showed up to stop the trimming because, again, it was without his permission.

## II. Procedural Background

In December 2020, Paula filed an application for a civil harassment restraining order against Wershoven. She subsequently filed separate applications for similar orders against Thibodeoux and Parker. All three applications were originally filed by Paula's mother, but were rejected for filing because Paula's mother has been deemed a vexatious litigant. Paula thereafter filed the exact same applications herself. The trial court consolidated all three requests for hearing. In her application for an order against Wershoven,[2] Paula complains that Wershoven, Thibodeoux, and Parker engaged in "harassment" because (1) Thibodeoux "trespassed" when she came with Wershoven to fix the plumbing problem in her apartment; (2) Wershoven and Thibodeoux "touched" the water heater "applicance[] without consent"; (3) Wershoven and Thibodeoux told Parker about Paula's and her mother's efforts to install an awning and trim trees because they were "hired to spy on [Paula's] family" and likely installed a camera that could look across the way into Paula's mother's apartment; and (4) Wershoven and Thibodeoux tampered with Paula's car.

On February 26, 2021, the trial court held a hearing on Paula's applications. After being sworn in, Paula reaffirmed the

---

[2]    On appeal, Paula did not include the applications pertaining to Thibodeoux or Parker.

3

contents of her application.  The trial court asked Paula if she had any evidence to offer from a disinterested witness regarding the tampering with cars that she alleged; Paula said she did not. Paula provided no evidence that Wershoven, Thibodeoux, or Parker had been the person who touched the water heater.  And the court found that Paula's allegations regarding Thibodeoux accompanying Wershoven to conduct repairs and her allegations that Wershoven and Thibodeoux were reporting what they saw to Parker did not constitute "harassment" because the latter acts had a legitimate purpose—namely, that Parker, as the trustee over the buildings, has the duty to "manag[e] the property that he's the trustee of" and the "absolute right" to "keep an eye out" on that property.  Accordingly, the court found that Paula "did not sustain the applicable burden of proof" to obtain civil harassment restraining orders.

Paula filed this timely appeal.

**DISCUSSION**

Paula argues that the trial court erred in denying her applications for civil harassment restraining orders.  A trial court may issue a civil harassment restraining order only upon a finding, by clear and convincing evidence, of "harassment"—that is, upon a finding of "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, *and that serves no legitimate purpose.*"  (Code Civ. Proc., § 527.6, subds. (a)(1), (b)(3), & (i), italics added.)  We review an order denying a restraining order for abuse of discretion (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420), and any subsidiary factual findings for substantial evidence (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497).  Where, as here, the

trial court finds that the party seeking a restraining order did not carry her burden of proof, "'the question for [us] becomes whether the evidence compels a finding in favor of [that party] as a matter of law.'" (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979.)

We conclude that the evidence presented does not compel a finding that Paula is entitled to civil harassment restraining orders against Parker, Wershoven, and Thibodeoux as a matter of law. Paula frankly admitted that she had no evidence from a disinterested party that any of these three individuals had vandalized any cars; and the trial court had ample basis to disbelieve any evidence from Paula or her mother given that they were embroiled in "a big conflict . . . in probate court" over management of the property. Paula never presented anything beyond speculation that Wershoven or Thibodeoux had adjusted the thermostat on the heater. (See *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1188 ["speculation is not evidence"].) Thibodeoux's act of accompanying Wershoven while he did repairs was a one-time incident that was not a willful course of conduct that could seriously alarm, annoy or harass Paula. And Parker's conduct in stopping unauthorized activity on the property he was charged with overseeing, and Wershoven's and Thibodeoux's conduct in acting as Parker's eyes and ears in doing so, are undoubtedly a "legitimate purpose"; as such, their conduct falls outside the definition of "harassment." (Code Civ. Proc., § 527.6, subd. (b)(3); *Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 521-522.)

Paula responds with what boils down to four arguments.

First, she challenges the factual support for the trial court's findings. Specifically, she asserts that she suffered "harassment"

5

because there *was* evidence of surveillance and damage to the cars. In so asserting, she is asking us to reweigh the trial court's factual findings, including its credibility findings. This we may not do. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12 [in reviewing trial court's order on application for restraining order, "[w]e do not determine credibility or reweigh the evidence"].) Further, she argues that Parker's conduct violated his duties as trustee over the property. But whether Parker adhered to those duties is a question for the probate court; it is *not* a basis for granting a civil harassment restraining order because, for purposes of Paula's applications, a trial court "may enjoin only 'harassment' as defined" (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812), and until the *probate court* determines that Parker has violated his duties, Parker's legitimate interest in acting as trustee puts his conduct squarely outside of the definition of "harassment."

Second, Paula contends that the trial court denied her due process because it refused to hear her testimony and found her not to be credible. This contention is unsupported by the record. The trial court asked Paula to reaffirm the statements in her application while under oath, and proceeded to ask her for evidence in support of some of those statements. Thus, this case is unlike *Nora v. Kaddo* (2004) 116 Cal.App.4th 1026, cited by Paula, where the trial court insisted upon deciding the motion "on the papers" and refused to entertain any testimony or other evidence. (*Id.* at pp. 1028-1029.) As noted above, we may not gainsay the trial court's implicit credibility finding.

Third, Paula argues that the trial court is biased against her. We discern no bias. Contrary to what Paula suggests, the trial court acted appropriately in taking judicial notice of the ongoing probate proceedings to understand how Paula's

6

application fit into those proceedings. (Evid. Code, § 452, subd. (d).) The court's efforts to keep Paula focused on the factual issues on which her applications turn was also appropriate, even if the court was very direct with Paula in those efforts. It is well settled that judicial conduct becomes impermissible bias only when it is "'"so prejudicial that it denie[s] [a party] a fair, as opposed to a perfect"'" hearing (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 536-537); "expressions of impatience, dissatisfaction, annoyance, and even anger" are not enough (*Liteky v. United States* (1994) 510 U.S. 540, 555-556). The trial court's efforts in this case came nowhere near the line of impermissible bias. And Paula's dissatisfaction with the substance of the court's rulings also does not constitute bias. (*People v. Guerra* (2006) 37 Cal. 4th 1067, 1112, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

Lastly, Paula complains that the trial court did not address her suspicion that Parker had somehow engaged in a "possible crime" by duping the court clerk into thinking that *Paula* was a vexatious litigant rather than her mother. Although the trial court acknowledged that the court clerk initially labored under the mistaken belief that Paula was a vexatious litigant, the clerk realized the mistake and allowed Paula to file the applications. What is more, the court clerk's momentary mistake could not possibly have any effect on the trial court's ruling on the merits.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

8