Filed 4/20/23 Spencer v. Endless Pursuit Corp. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TROVAN SPENCER,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ENDLESS PURSUIT CORP. et al.,<br><br>    Defendants and Appellants. | B316215<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV01599) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Reversed and remanded with directions.

Dermer Behrendt, Jeffrey D. Dermer; Theodora Oringher and Kenneth E. Johnson for Defendants and Appellants.

Cummins & Franck, Scott O. Cummings and Lee Franck for Plaintiff and Respondent.

_____

Endless Pursuit Corp. (Endless), Seed Your Own, LLC, and William Herbe (collectively, the Endless defendants) appeal from an order denying their motion to compel arbitration of an employment action filed by Trovan Spencer. Although the trial court concluded in its initial order that Spencer had not electronically signed the Endless arbitration agreement, the court granted the Endless defendants' motion to compel arbitration. Then, following a motion for reconsideration, the court denied reconsideration but entered a nunc pro tunc order correcting its prior order and denying the motion to compel arbitration.

On appeal, the Endless defendants argue the court erred in correcting its order absent a change in law or facts. They also contend the court erred because (1) Spencer electronically signed the arbitration agreement; (2) even if Spencer did not sign the agreement, there was an implied agreement to arbitrate; and (3) Spencer electronically signed a second arbitration agreement with Decision HR XXI, Inc. (Decision HR), a professional employer organization, which agreement required Spencer to arbitrate his claims against the Endless defendants. Because the evidence submitted by the Endless defendants compels the conclusion Spencer signed the arbitration agreement, and Spencer does not argue unconscionability on appeal, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Parties and Complaint*

Endless is in the business of picking up and recycling or disposing of household junk in the Los Angeles area under the business name "1-800-Got-Junk?". Spencer was employed by Endless as a truck team member and driver from April 2018 until

his employment was terminated in May 2020. William Herbe, a general manager of Endless, was involved in the hiring of Spencer.

On January 14, 2021 Spencer filed this lawsuit against the Endless defendants and Decision HR alleging 11 causes of action, including, among others, for disability discrimination, failure to accommodate, and hostile work environment in violation of California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.), interference with his right to medical leave and retaliation for his use of medical leave in violation of the California Moore-Brown-Roberti Family Rights Act (CFRA; §§ 12945.1, 12945.2), wrongful termination in violation of public policy, intentional infliction of emotional distress, and unfair competition (Bus. & Prof. Code, § 17200). Spencer alleged Endless, Seed Your Own, and Decision HR[1] jointly employed Spencer, who was supervised by Herbe.

B.    *The Motion To Compel Arbitration*

On March 9, 2021 the Endless defendants moved to compel arbitration pursuant to the arbitration agreement they asserted had been electronically signed by Spencer. Herbe attached the arbitration agreement to his supporting declaration. The agreement, dated April 9, 2018, states, "The parties to this Agreement agree to arbitrate any and all disputes, claims, or controversies . . . they may have against each other, including their current and former agents, owners, directors, or employees, which arise from the employment relationship between Employee and Employer or the termination thereof." The agreement

---

[1]    Decision HR is not a party to this appeal.

provides as examples of covered claims those brought under FEHA and for wrongful termination.

Herbe explained that Endless uses an electronic system that allows an employee to review documents that must be signed before the employee is hired, including an arbitration agreement and acknowledgment of receipt of Endless's employee handbook. According to Herbe, the first step in the onboarding process is for the Endless representative to create an account for the employee using the employee's personal email address. The representative then sends an email to the employee's personal email address that enables the employee to select a password for the account known only to the employee. The company representative then selects the employment documents to be signed and sends them to the employee's account, and the system generates an email advising the employee that the Endless representative is requesting the employee sign the documents. Employment documents can be signed only using the employee's unique username and password. According to Herbe, an employee "will use the computer's mouse to click on the space where a signature is required," then a box appears, prompting the applicant to "'draw signature with mouse.'" After the employee and employer representative sign a document, it is moved to a "'[c]ompleted'" folder in the employee's account, and it can be reviewed by the employee at any time.

Herbe averred that he initiated the electronic signature process for Spencer's employment documents by electronically creating and sending the arbitration agreement and two other documents to Spencer's account on April 9, 2018. Herbe stated he was with Spencer on April 9 when Herbe logged into his computer with his own account and password, then logged out.

4

Spencer then used Herbe's computer to log into his account, select a password, and electronically sign the arbitration agreement and other employment-related documents. Herbe attached to his declaration a copy of the arbitration agreement and an electronically generated record from the "BambooHR" system showing that on April 9, 2018 at 10:11 a.m. Herbe used a 1-800-Got-Junk? email address to request Spencer sign the arbitration agreement; Spencer signed the arbitration agreement on the same day at 10:28 a.m. using a personal email account; and Nicole Zalazar signed the arbitration agreement on behalf of Endless on April 11, 2018 at 6:14 p.m. using an Endless email address. Herbe added that signing the arbitration agreement and other employment-related documents "is a necessary step to complete the hiring process and be entered into the payroll system."

In his opposition, Spencer argued he had not electronically signed the arbitration agreement. Spencer submitted a supporting declaration in which he stated he "did not see [the arbitration agreement] or any arbitration agreement when [he] applied for employment with [Endless]," and he "did not ever signing [*sic*] or acknowledging [*sic*] any agreement." He stated further, "I was unable to finish all of the 'onboarding' documents in one day due to technical difficulties with the BambooHR software. My managers got on the computer using my logged in account and tried to fix the issue. I was told to come back the next day to finish the paperwork, but when I left, my account had not been logged out . . . ." Further, he finished electronically signing the remaining unsigned documents the following day, but the arbitration agreement was not among the documents available for signature.

Spencer declared, "It was William Herbe who signed the Arbitration [Agreement]. He told me that he would sign the Arbitration Agreement for me. This is nothing new for William Herbe as he has a history of cutting corners, such as instructing his employees to take pictures of mattresses in such a way as to make it look as if it is a full load, when in fact it is not." Spencer added, "Even if I had signed it, I would not have signed it using my middle name. I do not include my middle name when signing documents, unless prompted by the document, which the [Arbitration] Agreement does not." In addition, Spencer stated, "I would not have signed the arbitration agreement if presented to me when I applied to [Endless]." Spencer attached a tenant income certification questionnaire (with the information redacted) that he had signed as Trovan Spencer. In his opposition, Spencer also argued the arbitration agreement was procedurally and substantively unconscionable, and therefore unenforceable.

On June 22, 2021 (six court days before the June 30 hearing) Decision HR submitted a joinder in the Endless defendants' motion to compel arbitration, with a supporting declaration from Barbie Cooper, Decision HR's human resources manager. Cooper averred Decision HR is a professional employer organization that provides online onboarding documents to its worksite employer clients on the "Apex (Summit) Human Resource software system." Cooper described the Decision HR onboarding process and opined, based on her review of Spencer's onboarding documents and Herbe's declaration, that Spencer electronically signed the Decision HR arbitration agreement on April 20, 2018 at 2:00 p.m. Cooper attached to her declaration

6

the Decision HR arbitration agreement she stated Spencer signed.

In their reply brief, the Endless defendants argued Spencer had failed to rebut the showing made by the Endless defendants that Spencer signed the arbitration agreement on April 9, 2018. Specifically, the arbitration agreement contained Spencer's typed signature, as shown on the arbitration agreement. The Endless defendants also argued that Spencer had signed all three employment documents on the BambooHR system using the name "Trovan Spencer," without his middle name, referencing three employment documents Herbe attached to his supplemental declaration (the arbitration agreement, a disclosure and authorization document, and an acknowledgment of receipt of the employee handbook). The Endless defendants asserted further that Spencer was bound by the arbitration agreement even if he did not sign it because he was aware it was a mandatory condition of his employment, and further, he was required to arbitrate his claims pursuant to the Decision HR arbitration agreement.

In his supplemental declaration, Herbe averred Spencer's statements in his declaration were "not true" that Spencer could not complete all the onboarding documents on April 9 because of technical difficulties with the BambooHR software, he was told to return the next day to complete the process, and he left his account open without logging out. To the contrary, Herbe asserted, the electronic system showed Spencer signed all three documents in his account within four minutes on April 9 at the times indicated on the electronically generated record. Herbe added that Spencer electronically signed "the remaining documents" in his account on April 20, 2018 using the Decision

7

HR's electronic document system, including Decision HR's arbitration agreement, which Spencer signed on April 20 at 2:00 p.m., and six other employment documents. Herbe attached the Decision HR arbitration agreement to his declaration, including an electronically generated record showing Trovan Spencer signed the document at 2:00:17 p.m. on April 20 (although the agreement itself has no signatures).

Herbe also denied that he signed the arbitration agreement on Spencer's behalf, emphasizing that Endless employees can only access an Endless account using the employee's unique username and password. Further, the BambooHR system allows an employee to draw a signature (as indicated in Herbe's initial declaration) or to "apply a 'typed' signature to the document." Herbe attached screenshots of the system showing the "'draw'" and "'type'" buttons available to sign a document. Finally, Herbe recounted that Spencer logged into his account on the BambooHR system on April 20, 2018 and May 7, 2019, and each time he could have opened and reviewed the arbitration agreement.

C.  *The Trial Court's Ruling and Nunc Pro Tunc Order*

The trial court held a hearing on the Endless defendants' motion on June 30, 2021. The court heard argument of counsel, but no testimony was presented at the hearing.[2] Later that day the trial court issued a ruling in a minute order (June 30 order) granting the Endless defendants' motion to compel arbitration.

---

[2]     There was no court reporter at either the June or August 2021 hearing. However, on March 18, 2022 the trial court certified the Endless defendants' proposed settled statement, which described the two hearings. (See Cal. Rules of Court, rule 8.137.)

The minute order discussed the evidence submitted by the Endless defendants, including Herbe's declaration in which he explained Endless's electronic signature process, stated that Spencer signed the arbitration agreement, and attached an electronically generated "date stamp" showing Spencer signed the arbitration agreement on April 9, 2018 at 10:28 a.m. The court also described Spencer's declaration, including his averment that he never saw or signed the arbitration agreement, never used his middle name on official documents, and could not finish completing the onboarding documents on April 9. Further, Spencer declared it was Herbe who signed the arbitration agreement. The court found, "There are no other documents provided with the moving papers besides what is summarized above. There is no testimony about the time that the documents were signed by [Spencer] nor any testimony about the computer glitch. Therefore, by review of the evidence in the moving and opposing papers, the Court can conclude that [Spencer] is telling the truth about not signing as there is nothing in the moving evidence to contradict this testimony. [¶] The Court does not question the credibility of [Spencer's] contention that he did [not] sign the agreement." The court also found procedural unconscionability but no substantive unconscionability.

Although the trial court found Spencer had not signed the arbitration agreement, the court proceeded to grant the motion to compel arbitration and to dismiss the case without prejudice. The court observed that it had not received a joinder by Decision HR, but it considered Decision HR "to have joined in this motion," and it granted the joinder in the motion.

On July 14, 2021 Spencer filed a "motion for reconsideration/clarification of order granting motion to compel

9

arbitration." (Capitalization omitted.) In his motion, Spencer requested the trial court "on its own motion, modify the prior order so as to reflect the Court's conclusion that [Spencer] evidently did not sign the Arbitration Agreement, thus amending the order to deny the Motion to Compel Arbitration." (Capitalization, boldface, and underlining omitted.) Spencer relied on the holding in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108 (*Le Francois*) that a court may on its own motion reconsider its prior ruling based on the "'suggestion'" of a party.

The Endless defendants opposed the motion, arguing it was filed in violation of Code of Civil Procedure section 1008, subdivision (a),[3] because Spencer presented no new facts or law, and *Le Francois* did not authorize a written motion for reconsideration in those circumstances, but rather, only an oral request that the court reconsider its decision. (Citing *Le Francois, supra*, 35 Cal.4th at p. 1108.) The Endless defendants also argued the evidence supported the court's ruling because it showed Spencer signed the Endless arbitration agreement, as well as the Decision HR arbitration agreement. Decision HR filed a separate opposition to the motion.

On August 24, 2021, after a hearing, the trial court denied Spencer's motion, explaining there were no new facts or law, and there is "[n]o such motion as a motion for clarification." The court instead treated the motion "as one for nunc pro tunc correction of the Minute Order of 06/30/2021." The court granted this motion, explaining, "It appearing to the Court that through inadvertence and/or clerical error, the minute order of 06/30/2021

---

[3] Further statutory references are to the Code of Civil Procedure.

10

in the above-entitled action does not properly reflect the Court's order.  Said minute order is ordered corrected nunc pro tunc as of 06/30/2021 . . . ."  The order revised paragraphs 18 and 19 of the court's June 30 order granting the motion to compel arbitration and joinder to instead read that the motion and joinder were denied.  The court added as to the Decision HR joinder that it could file its own motion to compel arbitration.

The Endless defendants timely appealed from the August 24, 2021 order.

## DISCUSSION

A.      *Principles of Arbitration and Standard of Review*
Section 1281.2 requires the trial court to order arbitration of a controversy "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy . . . if it determines that an agreement to arbitrate the controversy exists."  On a motion to compel arbitration, the threshold question is whether there is an agreement to arbitrate the dispute.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*) [""""[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.""""]; *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120 (*Trinity*).)

The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence an agreement to arbitrate a dispute exists.  (*Pinnacle, supra,* 55 Cal.4th at p. 236; *Rosenthal v. Great Western Fin. Securities Corp.* (1996)

11

14 Cal.4th 394, 413.)  To meet this burden, the moving party must first produce "prima facie evidence of a written agreement to arbitrate the controversy." (*Rosenthal*, at p. 413; accord, *Trinity, supra*, 78 Cal.App.5th at p. 1120; *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).)  "'If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then . . . the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa*, at p. 165; accord, *Trinity*, at p. 1120; see *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal*, at p. 413.)  "If the opposing party produces such evidence, then 'the moving party must establish with admissible evidence a valid arbitration agreement between the parties.'" (*Trinity*, at p. 1120; accord, *Gamboa*, at p. 165.)  "Despite the shifting burden of production, '[t]he burden of proving the agreement by a preponderance of the evidence remains with the moving party.'" (*Trinity*, at p. 1120; accord, *Gamboa*, at pp. 165-166.)

Where the evidence is not in conflict, we review de novo the trial court's ruling on a petition to compel arbitration.  (*Pinnacle, supra*, 55 Cal.4th at p. 236; *Trinity, supra*, 78 Cal.App.5th at p. 1120; *Gamboa, supra*, 72 Cal.App.5th at p. 166.)  Where the court's ruling is based on factual findings, we review the ruling for substantial evidence. (*Trinity*, at p. 1121; *Gamboa*, at p. 166.)  "Under this deferential standard, '"[A]ll factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment."'" (*Trinity*, at p. 1121.)  However, "'[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is

12

whether that finding was erroneous as a matter of law.'" (*Ibid.*; accord, *Gamboa*, at p. 166; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066; see *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

"'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen, supra*, 32 Cal.App.5th at p. 979; accord, *Trinity, supra*, 78 Cal.App.5th at p. 1121; *Dreyer's Grand Ice Cream, supra*, 218 Cal.App.4th at p. 838.) "'[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734; accord, *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) "That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout*, at p. 1486; see *In re R.V.* (2015) 61 Cal.4th 181, 201, [where party fails to meet its burden on an issue in the trial court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the [trial] court could not reasonably reject it"].)

13

B.     *The Trial Court Did Not Err in Correcting Its June 30 Order*

The Endless defendants contend the trial court erred in modifying its June 30 order because Spencer's motion did not comply with section 1008, subdivision (a), and the trial court did not comply with the requirements of *Le Francois, supra*, 35 Cal.4th 1094 for a court to reconsider its ruling upon an informal request by a party.[4]  Spencer responds that his motion for reconsideration is not at issue on appeal because the court denied the motion and instead corrected its June 30 order nunc pro tunc.  In light of the court's characterization of its August 24, 2021 correction of its earlier order as being based on clerical error or inadvertence, and in the absence of any evidence to the contrary, we conclude it was not error to make the correction.

Whether the trial court had the authority to correct its June 30 order nunc pro tunc turns on whether the error it was correcting was clerical or judicial.  As the Court of Appeal

---

[4]     Under section 1008, subdivision (e), the trial court generally has no jurisdiction to hear a motion for reconsideration that does not comply with the requirements of the section. (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1278; *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 391.)  However, there is an "exception to section 1008's 'jurisdiction[al]' [citation] exclusivity" where a trial court reconsiders its prior interim order on its own motion.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 840; see *Le Francois, supra*, 35 Cal.4th at p. 1108 ["If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief.  For example, nothing would prevent the losing party from asking the court at a status conference to reconsider a ruling."].)

14

explained in *Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683, "Trial courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors." (Accord, *People v. Kim* (2012) 212 Cal.App.4th 117, 124; see *In re Candelario* (1970) 3 Cal.3d 702, 705 ["It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts."].) "The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.'" (*Candelario*, at p. 705; accord, *Sannmann*, at pp. 679, 683 [trial court lacked authority to grant relief to petitioner based on nunc pro tunc order where amended order did not correct a clerical error, and instead retroactively modified the record]; *People v. Borja* (2002) 95 Cal.App.4th 481, 485, 487 [trial court erred in issuing nunc pro tunc order retroactively changing defendant's sentence from 365 days in custody to 364 days to avoid immigration consequences because modification did not involve clerical error].)

We are troubled by the possibility that either the court clerk incorrectly entered the June 30 order (absent any apparent review by the trial court) or the court "through inadvertence" entered an erroneous order. Such sloppiness in entering an erroneous substantive order is inconsistent with the court's obligation to the parties and the justice system. However, it appears the June 30 order's statement granting the motion to compel arbitration and joinder was inadvertent in light of the court's clear finding based on Spencer's evidence that Spencer did not sign the arbitration agreement due to technical difficulties with the software, and when he returned the next day to sign the

15

employment documents, the arbitration agreement was not among the unsigned documents.  Based on these facts, the court found "that [Spencer] is telling the truth about not signing."  The minute order appears to have a typo in the next sentence that reads, "The Court does not question the credibility of [Spencer's] contention that he did sign the agreement."  It is evident given the court's previous summary of the evidence and findings that the court intended to state that it did not question the credibility of the fact Spencer "did not sign" the agreement.  The remainder of the order is likewise careless in addressing unconscionability (given the court's finding Spencer did not sign the agreement), and then purporting to grant the motion to compel arbitration and joinder.

Although we have difficulty understanding how the court or court clerk could have made such significant errors in the June 30 order, the August 24, 2021 order stating those errors were clerical or made through inadvertence is presumed on appeal to be correct, with the burden on the appellant to affirmatively prove error.  (*Petrolink, Inc. v. Lantel Enterprises* (2022) 81 Cal.App.5th 156, 165; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)  The Endless defendants have not pointed to anything in the record that shows the trial court initially intended to grant the motion, then later made a judicial decision to change its ruling to deny the motion.

C.    *The Trial Court Erred in Denying the Endless Defendants' Motion To Compel Arbitration*

It is undisputed that the Endless defendants met their initial burden to prove a written agreement to arbitrate all disputes.  (*Rosenthal, supra*, 14 Cal.4th at p. 413; *Trinity, supra*,

16

78 Cal.App.5th at p. 1120.) The Endless defendants submitted with Herbe's declaration the arbitration agreement with electronic signatures by Spencer and Zalazar (for Endless), with an electronically generated record showing the agreement was signed by Spencer on April 9, 2018. In addition, Herbe described the electronic signature process and declared he was with Spencer on April 9, 2018 when Spencer signed the agreement on Herbe's computer terminal.

The burden therefore shifted to Spencer to produce evidence challenging the authenticity of the agreement. (*Trinity, supra*, 78 Cal.App.5th at p. 1120; *Gamboa, supra*, 72 Cal.App.5th at p. 165.) Spencer met this burden. In his declaration, he stated he never signed or acknowledged any agreement to arbitrate, and he explained there were technical difficulties with the BambooHR software that prevented him from signing all the onboarding documents on the day the documents were presented to him. According to Spencer, his "managers" tried to fix the problem but were unable to do so, and Spencer left without logging off his account. When Spencer returned the next day to finish signing the documents, the arbitration agreement was not among the unsigned documents awaiting his signature. Spencer then signed the remaining documents in his account that had not been signed. He declared it was Herbe who signed the arbitration agreement, noting Herbe stated he would sign the agreement for him. Spencer added that he would not have signed the

arbitration agreement had it been presented to him when he applied to work for Endless.[5]

The burden therefore shifted back to the Endless defendants to establish admissible evidence of a valid arbitration agreement. (*Trinity, supra*, 78 Cal.App.5th at p. 1120*; Gamboa, supra,* 72 Cal.App.5th at p. 165.) In its June 30 order the trial court recounted the evidence presented by the Endless defendants and Spencer and concluded Spencer was telling the truth that he did not sign the agreement. The question on review, therefore, is whether the evidence presented by the Endless defendants compels the conclusion Spencer signed the arbitration agreement. (*Trinity*, at p. 1121; *Gamboa*, at p. 166; *Fabian v. Renovate America, Inc., supra*, 42 Cal.App.5th at pp. 1066-1067.) It does.

As discussed, the Endless defendants presented evidence that Spencer signed the arbitration agreement, including Herbe's declaration and the electronically generated record showing Spencer's electronic signature was entered on the arbitration agreement on April 9, 2018 at 10:28 a.m. Spencer did not argue in the trial court and does not contend on appeal that the

---

[5]     As discussed, Spencer also stated he would not have signed the arbitration agreement using his middle name. However, although the agreement contains Spencer's printed full name, his signature does not include his middle name. Spencer argued further in his opposition brief that his electronic signature on the arbitration agreement was typed, not drawn, contrary to the statement in Herbe's declaration that the BambooHR system allowed the employee to draw his or her signature on the agreement. But Herbe clarified in his supplemental declaration that the BambooHR system allowed an employee to draw or apply a typed signature to the agreement.

18

BambooHR system time stamps for the employment documents were incorrect, instead proffering his alternative explanation that it was Herbe who signed the arbitration agreement on the date and time reflected on the electronically generated record, and because of a computer glitch, Spencer signed the remaining employment documents the following day. But the Endless defendants submitted evidence with their reply brief contradicting Spencer's version of events, including an electronically generated record showing that as of April 11, 2018, there were only three signed documents in Spencer's personal employment account, all electronically signed by Spencer on April 9 or Zalazar on April 11: the arbitration agreement, a disclosure and authorization form, and an acknowledgment of receipt of the employee handbook.[6] Herbe also attached to his supplemental declaration seven Decision HR employment documents electronically signed by Spencer, with electronically generated records showing the documents were signed by Spencer on April 20. Herbe declared all the documents bearing Spencer's signature were signed on April 9 or 20, 2018, not April 10.

Spencer offers no explanation for how there are electronically generated records showing Spencer's signatures were placed on the arbitration agreement and two additional employment forms on April 9 and seven employment forms on April 20, with none on April 10. Therefore, the Endless defendants' reply evidence disputing Spencer's version of events

---

[6]     According to Herbe, the arbitration agreement in the folder was added to Herbe's personal employment account on April 11, 2018 because that is the date it was countersigned by Zalazar. A fourth document in the folder was added on May 7, 2019.

was "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen, supra*, 32 Cal.App.5th at p. 979; accord, *Trinity, supra*, 78 Cal.App.5th at p. 1121.)

We recognize that under the compels-the-conclusion standard, we presume the trial court found the losing parties' evidence lacked sufficient weight and credibility to carry the parties' burden of proof. (*Bookout v. State of California ex rel. Dept. of Transportation, supra*, 186 Cal.App.4th at p. 1486.) But the trial court made clear in its June 30 order it had reached its conclusion Spencer was "telling the truth about not signing" based on the court's "review of the evidence in the moving and opposing papers." The court emphasized in its factual findings that there was no testimony presented by the Endless defendants about when the documents were signed by Spencer or "testimony about the computer glitch." But there was. As discussed, Herbe averred in his initial declaration that Spencer "electronically signed the Arbitration Agreement [on April 9] at 10:28 a.m." And Herbe stated in his supplemental declaration that "there were no 'technical difficulties' with the BambooHR system" and Spencer signed all three documents in his employee account on April 9 (not April 10), as shown by the electronic record.[7] Although the

_____

[7] We acknowledge a plaintiff opposing a motion to compel arbitration has no statutory opportunity to present evidence in response to reply evidence submitted with the moving party's reply papers. However, Spencer has presented no evidence he attempted to rebut the reply evidence by requesting an opportunity to present additional evidence or challenging the evidence at the hearing. And Spencer does not argue there is any

20

compels-the-conclusion standard is "almost impossible" to meet, the standard presumes the trial court found the losing party's evidence lacked sufficient weight and credibility to carry its burden of proof. (*Id.* at p. 1486.) Where, as here, the court clearly failed to consider all the evidence presented by the losing parties, the standard is met if the losing parties present uncontradicted and unimpeached evidence to support their position. To hold otherwise would convert our review into a rubber stamp of the trial court's factual findings based on that court's incomplete review of the record despite unimpeached evidence to the contrary. We therefore reverse the trial court's order denying the motion to compel arbitration.[8]

_____

evidence in the record that rebuts the Endless defendants' showing that all documents were signed on April 9 or 20, with none signed on April 10.

[8] Although Spencer raised procedural and substantive unconscionability in his opposition to the motion to compel arbitration, he does not address these arguments on appeal. He has therefore forfeited any argument the agreement was unconscionable and unenforceable. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 ["""Issues not raised in an appellant's brief are [forfeited] or abandoned."""]; *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555 [same].)

## DISPOSITION

The order denying the Endless defendants' motion to compel arbitration is reversed.  The trial court is directed on remand to vacate its order denying the motion to compel arbitration and to enter a new order granting the motion.  The Endless defendants are to recover their costs on appeal.


                                        FEUER, J.


We concur:


        PERLUSS, P. J.


        SEGAL, J.