Filed 8/24/22  Sanmina-Sci Corp. v. Pace USA CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SANMINA-SCI CORPORATION,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>    v.<br><br>PACE USA, LLC,<br><br>    Defendant and Appellant,<br><br>PACE PLC,<br><br>    Defendant, Cross-complainant and Appellant,<br><br>PACE AMERICAS, INC.,<br><br>    Cross-complainant and Appellant. | H046025<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV-233960) |

This is a breach of contract case between two companies involved with making equipment for a satellite TV provider.  Sanmina-Sci Corporation manufactured television set-top boxes for Pace USA, LLC.  Pace sold them to its customer, the satellite provider DirecTV.  Pace eventually decided to use another manufacturer and wind up its relationship with Sanmina.  During the winding up process, the parties agreed that Sanmina would produce components to fill existing DirecTV orders; they also agreed that Pace would buy millions of dollars in surplus parts from Sanmina.

In the end neither party was satisfied. Pace had not paid for all the goods it received, so Sanmina sued for breach of contract. Meanwhile Pace did not receive some of what it ordered from Sanmina, so Pace cross-complained. The trial court issued a statement of decision finding for Sanmina on its breach of contract claims and against Pace on its claims. Judgment was entered for Sanmina for over $4.8 million. Pace appeals, contending the decision to award nothing on its cross-complaint is not supported by the evidence. Because substantial evidence supports the trial court's findings, we will affirm the judgment. Sanmina cross-appeals, contending the trial court incorrectly denied its post-trial motion for attorney fees. We find no error in that decision and will affirm the order.

## I. BACKGROUND

Pace USA, LLC supplied television set-top boxes to satellite television provider DirecTV throughout the early 2000s. (Distinguishing among the several Pace entities is not important to resolving this appeal.) DirecTV was Pace's customer. When DirecTV ordered boxes, Pace would contract with a manufacturing company to build them. Sanmina was one of the contract manufacturers. It made the boxes at its plant in Guadalajara, Mexico.

In late 2011, Pace decided to obtain its boxes from a different Guadalajara-based manufacturer (a company called Flextronics), which led to the agreements at issue here. Pace needed manufactured boxes to fill existing orders from DirecTV, and Sanmina needed to sell the excess components it would no longer need once Pace started using another manufacturer. Pace and Sanmina entered into several contracts to accomplish those things. The contracts were formed not in the traditional way, by formal offer and acceptance, but rather by an informal process allowed under the Uniform Commercial Code: purchase orders and invoices were exchanged that specified quantities and prices; the parties' course of dealing and applicable Commercial Code provisions supplied any missing terms. (See Cal. U. Com. Code, § 2207(3).)

2

Just before disclosing its plan to switch to Flextronics, Pace ordered 160,020 partially assembled set-top boxes from Sanmina. Sanmina agreed to provide them within two months. The partially assembled units were to be shipped to Argentina, where Pace had a local manufacturing partner that would finish and deliver the final product. But Sanmina was unable to provide all the units Pace ordered, delivering only 114,822. Pace accepted and paid for those, and they were converted into finished boxes for DirecTV.

Still needing over 45,000 boxes to fill the DirecTV order, Pace decided to have its manufacturer in Argentina build them from scratch. Pace ordered from Sanmina certain components necessary to build the boxes, and Sanmina agreed to ship the parts to Argentina. The shipment was incomplete, however, and the Argentina manufacturer did not receive all the parts it needed. Pressing ahead to produce the boxes, Pace rushed the missing parts to Argentina by air and paid its manufacturer there to add an extra shift to speed production, but those efforts were ultimately fruitless. DirecTV was concerned that the alternative process to manufacture the units in Argentina would delay getting the boxes to its customers, and DirecTV wanted to focus on its more pressing need to obtain a newer model set-top box. Before the remaining 45,000 older models could be produced, DirecTV canceled its order.

Because its relationship with Pace was ending, Sanmina could no longer use the millions of dollars in components it had on hand. However Pace was still in the set-top box supply business and could use the parts. Negotiations ensued, an audit was conducted at the Sanmina facility, and it was eventually agreed Sanmina would sell about $17 million worth of parts. Pace would pay $9,358,005, and its new partner Flextronics would pay the rest. In the meantime, Sanmina successfully cancelled upcoming deliveries of new parts, which meant the quantity of components on hand would be smaller than anticipated. Sanmina notified Pace and the parties communicated about adjustments to the list of materials Pace was going to purchase. Sanmina ultimately

3

delivered fewer parts than initially agreed upon, consistent with its communications to Pace about having less product on hand than expected.

In early 2012, Pace received an order from DirecTV for an additional 92,000 set-top boxes. Pace agreed in March 2012 to purchase from Sanmina parts needed to manufacture those boxes for a little over $1.235 million. Sanmina agreed to supply the parts directly to Flextronics. When Flextronics sent trucks to pick up the parts on March 31, Sanmina failed to load everything Pace had ordered, although the invoices Sanmina contemporaneously sent accurately described the number of parts delivered. Flextronics began manufacturing the 92,000 boxes on May 31, but the next day DirecTV canceled the order.

By then the relationship between Sanmina and Pace had essentially ended, and Pace still owed millions of dollars in unpaid invoices. On June 4, Pace told Sanmina it would withhold further payments because it blamed Sanmina for DirecTV's cancellation. Sanmina responded that it "objects to any attempt by Pace to offset any of the [accounts receivable], or any other obligations Pace has to Sanmina."

Sanmina sued Pace for breach of contract several months later. It alleged Pace failed to pay invoices totaling $3,034,377.36 and sought damages in that amount plus prejudgment interest. Pace cross-complained and alleged Sanmina failed to deliver products as agreed, causing Pace to lose profits and incur expenses to mitigate its losses.

The case was tried to the court without a jury. Pace argued Sanmina's incomplete deliveries caused DirecTV to cancel its orders and Sanmina was therefore liable for lost profits and mitigation expenses. Pace argued those losses more than offset what it owed in unpaid invoices. Sanmina argued that Pace owed money for products Pace acknowledged it received, and Pace was attempting to blame Sanmina for the lost DirecTV business merely to avoid paying Sanmina the outstanding amounts owed. The trial court accepted Sanmina's theory on its breach of contract claims, awarding

4

$4,855,059.03 in damages and interest. The trial court ruled Pace should take nothing on its cross-complaint.

## II. DISCUSSION

### A. Pace's Appeal

Pace contends the decision to award nothing on the cross-complaint must be reversed because it is based on findings not supported by the evidence, which is a difficult standard to meet on appeal. When a trial court's factual findings are challenged, our review is limited to determining whether substantial evidence supports the court's findings, even if the evidence is contradicted or could also support a different conclusion. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461.)

Determining the facts from conflicting evidence is the role of the trial court. Cases are not retried on appeal. (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1276.) We therefore do not draw our own conclusions from the evidence but instead consider it in the light most favorable to the prevailing party and with the benefit of every reasonable inference. (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.) We liberally construe the findings to support the judgment and do not reweigh the evidence or make credibility determinations. (*Ibid*.) " 'The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts.' " (*Alper v. Rotella* (2021) 63 Cal.App.5th 1142, 1148.) With those rules in mind, we look to the record to determine if the challenged findings are supported by substantial evidence.

#### 1. Finding of No Damages from Breach of Contract to Supply 160,020 Partially Assembled Units

Pace alleged that Sanmina breached its agreement to supply 160,020 partially assembled units to the Argentina manufacturer when it provided only 114,822. The trial court agreed Sanmina was in breach but found Pace incurred no damages from the

breach. The critical basis for the court's conclusion is that even if Sanmina had fully performed, DirecTV would still have canceled the order the contract was formed to fill.

The trial court found DirecTV canceled its order for 92,000 units because the alternative manufacturing process could cause delay and because it wanted Pace to move on to produce the newer model boxes. That finding is supported by substantial evidence: Pace's director of manufacturing testified about the changed manufacturing process for the units, and an email sent by a DirecTV employee after Pace disclosed the change instructed Pace to "not waste time" producing the older model boxes "as we are not going to buy it." The same email asked Pace for a proposal to manufacture the newer models.

The finding that Sanmina's actions were not the cause of DirecTV's cancellation is sufficient to support the trial court's conclusion that Sanmina is not liable for the damages sought by Pace. Pace requested damages in three categories: (1) expectation damages (i.e., the benefit Pace expected to receive had the contract been performed) in the form of profits lost because it could not sell the finished boxes to DirecTV; (2) other losses due to DirecTV's cancellation, mainly related to being left with obsolete component parts; and (3) expenses incurred attempting to mitigate the loss caused by Sanmina's breach.

As to the first category, expectation damages, the finding that DirecTV canceled its order for reasons unrelated to Sanmina's conduct precludes Pace from recovering lost profits. Contract remedies, including those under the Uniform Commercial Code that apply here, are intended to put the nonbreaching party in a position as good as if the other party had performed—but not a better position. (See Cal. U. Com. Code, § 1106(1).) The trial court's finding, supported by substantial evidence, that DirecTV would have canceled its order regardless of Sanmina's failure to deliver all the components precludes expectation damages here. Based on that finding, if Pace were awarded any portion of what it expected to gain from selling the boxes to DirecTV, that would put Pace in a better position than if Sanmina had fully performed. The trial court's conclusion that

6

Pace cannot recover expectation damages is supported by its finding that Sanmina's breach did not cause DirecTV to cancel.

Damages in the second category, losses resulting from DirecTV's cancellation, are not recoverable again based on the finding that Sanmina's breach did not cause the cancellation. (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 792 [" 'In breach of contract actions, damages cannot be *presumed* to flow from liability. It is essential to establish a *causal connection* between the breach and the damages sought.' "]) If Sanmina's breach did not cause DirecTV to cancel, neither did it cause the losses flowing from the cancellation.

The third category of damages, expenses incurred to mitigate Pace's losses resulting from Sanmina's breach, also cannot be awarded based on the trial court's finding that the breach did not cause DirecTV to cancel. As a general matter, because a nonbreaching party must mitigate damages caused by a breach of contract, reasonable expenses incurred in fulfilling that obligation can be recovered as an item of damages. (See *Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442, 461.) But mitigation expenses cannot be recovered when there are no breach-related damages to mitigate. Pace provides no authority suggesting it can recover expenses to mitigate damages *not* caused by the breach. The authority it does cite, *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, expressly declined to decide that point. (*Id*. at p. 459 ["Corporate defendant contends that if it is not liable for lost profit damages as urged above, corporate defendant is also not liable for damages arising from plaintiff's attempt to mitigate such lost profit damages by opening a new practice. Since we have resolved the foregoing issue against the corporate defendant, there is no need of any further discussion of this issue."].) Having found that Sanmina's breach did not cause a loss, the trial court properly did not reach the issue of whether to add damages for expenses Pace incurred in efforts to mitigate its losses.

7

We acknowledge the reasonableness of Pace's interpretation--that it was Sanmina's breach that prompted the production changes, which then caused DirecTV to cancel. But a reasonable alternative interpretation of the evidence is not grounds for reversal under the substantial evidence standard. After considering all the evidence, the trial court found the cancellation was caused by Pace's decision to change the production process and by DirecTV's move to a newer product. Because that finding is supported by substantial evidence, our review ends there and the finding will not be disturbed on appeal. (See *People v. Overstock.Com, Inc.* (2017) 12 Cal.App.5th 1064, 1079 ["The test 'is simply whether there is substantial evidence in favor of the respondent. If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.' "].)

2. **Finding that the Parties Agreed to Modify the Quantity of Excess Materials Purchased**

Pace alleged Sanmina breached the contract to sell excess components it had on hand when it delivered less than the quantity it agreed to sell. The trial court decided there was no breach because the parties agreed to modify the agreement to reflect the smaller number Sanmina ultimately had; and the quantity in the modified agreement was what Sanmina delivered. The trial court found: "the parties agreed to change the mix of materials … to reflect what Sanmina actually had on hand after making appropriate cancellations and redirecting material in transit. … Pace did not offer any proof that Sanmina failed to comply with the [purchase order], as amended by the agreements to change the materials to be delivered … thus it failed to prove breach, damages, or causation."

That finding is supported by substantial evidence: contemporaneous emails between representatives of each company discuss the shortage and what to do about it. A Sanmina employee testified he informed Pace "we will not be able to ship 100 percent of the original quantity of the PO that we received," and Pace agreed to a modified proposal.

8

The parties stipulated that each invoice from Sanmina showing a charge for materials accurately reflects the materials that were delivered. Pace argues the evidence falls short of proving it intended to modify the agreement. But merely because it can be reasonably argued that Pace did not intend to modify the original agreement does not affect our conclusion that the trial court's finding to the contrary is supported by substantial evidence.

Pace also asserts that, regardless of any modification of terms, Sanmina breached the agreement by overcharging for a handling fee (by $122,467). On that point there is conflicting evidence and significant ambiguity as to the amount paid. A Pace employee testified a handling fee was paid based on the materials included in the original, unmodified agreement; but it is unclear from the relevant invoices what handling fee was charged or how it was calculated. Because Pace had the burden of proof on the issue of breach, the trial court's finding of no breach could be reversed only if the evidence were uncontradicted and " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Juen v. Alain Pinel Realtors, Inc*. (2019) 32 Cal.App.5th 972, 978, citing *In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.) We are not persuaded that the evidence suggesting Pace may have been overcharged meets that high bar.

### 3. Finding that Pace Failed to Give Sanmina Notice of Breach

Pace alleged Sanmina breached the contract to sell components for the new manufacturer, Flextronics, to make 92,000 set-top boxes to fill a DirecTV order. The court found Sanmina breached the agreement because it did not provide all the components specified by the purchase order. But the court also found that Pace did not give Sanmina appropriate notice of the breach, which is required to recover damages under Commercial Code section 2607(3)(A). The trial court found: "There is no

9

evidence that Pace ever rejected any deliveries or gave notice of breach within a reasonable time. [Cal. Commercial Code section 2607(3)(A)]."

The finding that Pace did not give notice of breach within a reasonable time precludes it from recovering damages or any other remedy. The parties agree the Uniform Commercial Code applies to this contract for the sale of goods. And Commercial Code section 2607(3)(A) provides, "The buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." "The requirement of notice of breach is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements. The notice requirement also protects against stale claims." (*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 380; see also *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 136.) Pace's failure to give timely notice of breach means the trial court's decision to award no remedy for that breach must be upheld.

Pace argues the statement of decision is ambiguous about a finding of no timely notice of breach. Pace points to a portion of the statement of decision that says, "It may be that Pace gave sufficient notice of the shortages under Commercial Code section 2607 and that would be related to enforcement of the contract terms." We do not read that sentence as ambiguous in light of the trial court's express finding that "there is no evidence that Pace ever [] gave notice of breach within a reasonable time." As the buyer, Pace had the burden to prove it gave timely notice of breach. (*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, *supra*, 169 Cal.App.4th 116, 136.) Taken together, the trial court's acknowledgement that it is possible Pace gave such notice, while stating there is no evidence it did, supports the conclusion that Pace failed to meet its burden of proof on the issue.

10

Pace asserts it should be able to recover damages in the form of a refund of the purchase price because it rejected the delivered goods, or, alternatively, it revoked its acceptance. (See Cal. U. Com. Code, § 2602(1).) Pace notes evidence that it did not receive the "final tally" of what was delivered until May 2012, and that it then promptly notified Sanmina on June 4 that it did not intend to pay because DirecTV had canceled its order. But Pace's argument that the evidence "is sufficient to show revocation of acceptance" misapprehends our standard of review. Here again, as Pace had the burden of proof at trial, it cannot succeed on appeal simply by pointing to evidence which would have been sufficient to support a different finding by the trial court. Pace must show on appeal that the evidence is uncontradicted and so compelling that the trial court could not have reasonably found otherwise. (*Juen v. Alain Pinel Realtors, Inc.*, *supra*, 32 Cal.App.5th 972, 978.)

Viewed as a whole and favorably to the judgment, the evidence supports the trial court's conclusion that Pace did not act timely when it refused to pay for the delivered goods. It is undisputed the goods had been delivered over two months earlier, and that Flextronics knew by early May some items were missing. The parties stipulated that the invoices Sanmina provided contemporaneously with delivery accurately described the quantity of items delivered. The evidence on this point is not uncontradicted, as would be required for Pace to be entitled to a finding in its favor as a matter of law. The trial court's conclusion that Pace is not entitled to a remedy for breach of the agreement to provide components to Flextronics must therefore be upheld.

### B. Sanmina's Cross-Appeal

In its cross-appeal, Sanmina contends the trial court erred by denying its post-trial motion for attorney fees. Sanmina argues the terms the parties agreed on provide for an award of attorney fees to the party that prevails in litigation on the contract, and as the prevailing party it is entitled to fees. Whether the basis for awarding fees is satisfied

11

raises a legal question which we review de novo. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

Sanmina argues its entitlement to prevailing party attorney fees exists by operation of Commercial Code section 2207(3), which provides that when writings exchanged by parties to a transaction do not otherwise establish a contract, a contract is nonetheless formed when the conduct of both parties recognizes the existence of one. (Cal. U. Com. Code, § 2207(3).) In such a case, the contract terms are those on which the parties' writings agree, together with supplementary terms from the Commercial Code as needed. (*Ibid.*)

Sanmina asserts the forms exchanged by the parties here contain an attorney fees provision and since the forms agree on that point, the provision becomes part of their agreement under Commercial Code § 2207(3). The terms Sanmina points to are (1) the attorney fees provision contained in its own form, which states, "attorney's fees and costs will be awarded to the prevailing party in the event of litigation,"; and (2) a choice of law provision in Pace's form, which states the contract "will be governed by English law." Sanmina's theory is that Paces' choice of law provision is the equivalent of its prevailing party attorney fees provision because under English law, the prevailing party in a lawsuit is generally entitled to attorney fees.

Sanmina's argument cannot succeed because the parties' writings do not agree regarding English choice of law. A term that provides for a dispute to be governed entirely by the law of England is much broader, and clearly different from, a term that specifically provides for the prevailing party in litigation to recover attorney fees. A contract formed under Commercial Code section 2207(3) includes only the terms on which the parties' writings agree. Since only Pace's form contains a choice of law provision calling for application of English law, that term is not part of the contract. (See *Transwestern Pipeline Co. v. Monsanto Co.* (1996) 46 Cal.App.4th 502, 519 [where one writing includes a provision and the other is silent on that point, there is no agreement for

12

purposes of section 2207(3)].)  And since only Sanmina's form contains a prevailing party attorney fees provision, that term drops out as well.

Sanmina alternatively argues that Civil Code section 1717 separately creates an entitlement to attorney fees.  But that statute merely prevents one-way attorney fees provisions; it requires that when a contract purports to entitle one party to fees, it must be construed to allow any party that prevails to recover fees.  (Civ. Code, § 1717, subd. (a).)  And that section only applies "where the contract specifically provides that attorney's fees [] shall be awarded either to one of the parties or to the prevailing party." (*Ibid*.)  As discussed above, the contract formed here under Commercial Code section 2207(3) does not contain an attorney fees provision.  Civil Code section 1717 therefore does not apply to this case.

### III.    DISPOSITION

The judgment is affirmed.  The order denying the motion for an award of attorney fees is affirmed.  In the interests of justice, each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H046025 - *Sanmina-Sci Corporation v. Pace USA, LLC*