Filed 7/1/25  Harris v. TAP Worldwide CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DENETRIUS HARRIS, | B331232 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22CMCV00534) |
| v. | |
| TAP WORLDWIDE, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Shultz, Judge.  Affirmed.

Fernald Law Group, Brandon Claus Fernald and Gina McCoy for Defendants and Appellants.

Cummings & Franck, Scott O. Cummings, Lee Franck and Andrew Butzen for Plaintiff and Respondent.

---

Denetrius Harris sued his former employer, TAP Worldwide, LLC (TAP), alleging racial discrimination, harassment, and related claims. TAP petitioned to compel arbitration, contending that Harris reviewed and approved its arbitration agreement during an electronic onboarding process required of new employees. The trial court denied the petition, finding that TAP failed to establish that Harris had agreed to arbitrate his claims.

On appeal, TAP contends the trial court erred in holding that an electronic signature was required to establish an agreement to arbitrate. TAP also claims that the court ignored its evidence demonstrating that Harris accessed TAP's secure online portal and acknowledged the arbitration agreement.

We find no error. Contrary to TAP's contention that it presented undisputed evidence, the trial court relied on Harris's evidence that he never reviewed or agreed to the arbitration agreement and that an employee's approval would be marked on the document itself. As such, the court concluded that TAP had not met its burden to establish an agreement to arbitrate. We find no error in this conclusion and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      The Complaint

Harris filed his complaint against TAP, an automotive parts distributor, in November 2022.[1]  He alleged causes of action for discrimination and retaliation based on race and association with other African-American employees, hostile work environment, failure to prevent unlawful practices, failure to provide meal and rest breaks, whistleblower retaliation, and unfair business practices. Harris alleged that he began working for TAP at its Compton warehouse in approximately October 2019 and was "actually and/or constructively" terminated on January 8, 2020.

---

[1]      Harris also sued related entities Polaris, Inc., Polaris Sales, Inc., and Wheel Pros, LLC, as well as supervisor Oscar Pacheco. We refer to the defendants and appellants collectively as TAP.

## II. Petition to Compel Arbitration
### A. *Petition*

TAP filed a petition to compel arbitration of Harris's claims in January 2023. TAP relied on its employee handbook, which included an arbitration agreement as Appendix A, and contended Harris had received and acknowledged the agreement as part of the new employee "onboarding" process.

Specifically, TAP presented the declarations of two TAP employees, Randall Krzesinski, Director of Total Rewards, and Ashley Donlon, Vice President of Human Resources. Donlon outlined TAP's "online onboarding" process, which she stated every employee was required to complete "prior to beginning work at TAP." She explained that once a new employee accepts an offer from TAP and completes a background and drug screen, TAP sends two emails to the employee. One email contains instructions and a link to register with TAP's online portal, while the second email contains the employee's "unique Associate ID number." Using this information, the employee may access the portal and create a username and password. In the portal, the employee is "guided through a step-by-step onboarding process," which includes reviewing TAP policies, such as the employee handbook and arbitration agreement. Donlon further stated that for each policy, "the employee is required to scroll through the entirety of the document and then agree to it by clicking on a designated button," which is recorded by the system.

For Harris in particular, Krzesinski stated in his declaration that on July 25, 2019, a "welcome email advising Mr. Harris of the required onboarding process and attaching our standard onboarding instructions was sent to . . . Mr. Harris' email address." However, Krzesinki noted that "[c]opies of the welcome emails are not saved to the system" and thus the system could not verify that any such email was sent to Harris. Instead, Krzesinski attached an "exemplar email" that he contended was identical to the email that "would have been sent automatically by the onboarding system" to Harris. He also attached a PowerPoint presentation generally outlining the onboarding system.

Donlon also claimed that TAP's system sent Harris the welcome emails on July 25, 2019. Subsequently, "[o]ur system confirmed that Mr. Harris registered with the onboarding system on [*sic*] and thereafter completed the onboarding process." She contended that TAP's system "does not affix an electronic signature to policy documents that are electronically acknowledged by an employee. Instead, the employee's agreement is recorded by the onboarding system when the employee reviews the document and clicks on the button signifying their agreement and acknowledgment." Donlon attached a document appearing to be a screenshot and bearing the heading "Harris, DJ (Harris, Denetrius)'s Company Policies." It contains a column listing the names of "Completed Policies," a corresponding column titled "Completed Date" and a column titled "Status," bearing a green check mark and the word "Acknowledged." Donlon stated that this document showed that Harris electronically acknowledged all required policies, including the employee handbook and arbitration agreement, on August 5, 2019.[2]

TAP also included as exhibits copies of the employee handbook and arbitration agreement that it claimed Harris reviewed and acknowledged during the onboarding process. Donlon stated that she confirmed from the onboarding system "settings page" that the exhibits reflected the documents Harris would have seen when he used the system on August 5, 2019.

The employee handbook provides that it is "each employee's responsibility to read, understand and follow the provisions of this Handbook," and that the "policies contained in this Handbook are effective immediately." The handbook also contains a page titled "Acknowledgment and Receipt of Employee Handbook," containing blank lines for employee name, signature, and date.

The handbook section titled "Mandatory Alternative Dispute Resolution Binding Arbitration of Claims" outlines the policy to arbitrate "any and all employment related claims" between the employee and TAP. It refers to Appendix A of the handbook for greater detail, "as well as the Agreement to Arbitrate, a copy of which you will be required to execute prior

---

[2] TAP refers to this document as a "Policy Acknowledgment Status Report" but that phrase does not appear on the document. Nor does Donlon's declaration further explain where or how she generated this document.

to employment with the company."  This section further states that if "an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook."

Appendix A of the handbook is titled "Current Employment Alternative Dispute Resolution Agreement" (arbitration agreement).  The arbitration agreement sets forth the parties' agreement to submit to binding arbitration "any dispute, claim or controversy arising out of or in any way connected with any dispute relating to the terms and/or conditions of employment."  The arbitration agreement also provides that by voluntarily accepting or continuing employment, an employee "will be deemed to have knowingly and voluntarily consented to and accepted all of the terms and conditions set forth herein."  The copy of the agreement produced by TAP was signed by Krzesinski on behalf of TAP; it contains a blank signature line for the employee.

TAP argued that the security procedures in its online portal ensured that only "a person using Harris' unique User ID and password with access to Harris' personal email address" could have completed the onboarding process and electronically viewed and acknowledged the TAP policies and arbitration agreement.  As such, TAP contended it had demonstrated that Harris agreed to arbitrate.

**B.** ***Opposition and Reply***

Harris opposed the petition. In his declaration, he contended that he had never seen TAP's arbitration agreement or employee handbook prior to the filing of TAP's petition.  Harris stated that he accepted the job at TAP in person following his interview on July 20, 2019. About a week later, TAP employee Pacheco called and asked him to come to TAP's office to complete onboarding.  At the office, Harris met with "a woman from TAP's human resources," and completed the onboarding process in person.  Harris denied that anyone ever showed or provided him with a copy of the arbitration agreement or employee handbook.  He also denied ever receiving any welcome emails or signing up for TAP's online portal and denied ever signing any arbitration agreement with TAP.

Harris argued that TAP failed to meet its burden to establish the existence of an agreement to arbitrate. He noted that TAP produced an arbitration agreement signed only by TAP and that none of the documents related to the onboarding process referenced him. As such, he contended that TAP failed to establish that he had electronically signed the arbitration agreement. He further argued that the arbitration agreement was unenforceable and unconscionable.

In reply, TAP argued that it had met its burden to demonstrate that Harris electronically reviewed and accepted the employee handbook and arbitration agreement. Alternatively, TAP requested leave "to conduct discovery on the issue of whether Mr. Harris in fact completed the onboarding process."

TAP also included with its reply a declaration from Renee Austin, Human Resources Director. She stated that all new employees at TAP were required to complete the online onboarding process, even if an employee performed onboarding in person at TAP's offices. She further stated that Harris would "not have been allowed to start work and would not have been registered in the payroll system, until he completed this onboarding process and acknowledged policies" including the arbitration agreement.

C. *Further Discovery and Briefing*

At the hearing in April 2023, the court indicated its tentative decision to deny the petition. However, the court granted TAP's request for discovery and continued the hearing.

TAP then took Harris's deposition and Harris deposed TAP's designated person most knowledgeable regarding its hiring process. The parties included excerpts of these depositions with their supplemental reply filings. Harris reiterated in his deposition that he never accessed his online account at TAP. He testified that a few days after he was offered the job in person, he met with a woman from Human Resources, who took his picture and she "typed in some things for me on the computer," including his tax information, name, address, and social security number. She did not ask for a password or username. Harris did not review any documents on the computer.

6

TAP designated former employee John Skaggs for deposition as the person most knowledgeable regarding TAP's electronic onboarding system and the review of TAP policies by applicants and new employees. Skaggs testified about two emails to Harris that he sent early in the hiring process, copies of which had been produced. The first email contained TAP's offer of employment to Harris; the second requested consent to a background screening. He admitted, however, that neither email contained the associate ID number or registration code needed to register on TAP's online portal.

Regarding the arbitration agreement, Skaggs testified that "when the employee acknowledges it, it will digitally capture at the bottom of the document saying that this employee . . . signed and dated it. Like a digital signature." He then stated that he believed that was correct, but could not recall. Skaggs continued, "[b]ut my mind wants to reflect that it is, yes, it should be there."

TAP filed a supplemental reply in July 2023. It argued that Harris's deposition testimony regarding the sequence of events from interviewing to getting hired at TAP was "irreconcilable" with his declaration. TAP also argued that Harris's claim to have completed certain tasks outside of the online system was contrary to the evidence it presented regarding what was required of new employees and the "digital trail of [Harris's] interactions with TAP's employee portal." For example, contrary to Harris's claim that he signed up for direct deposit outside of the electronic portal after he began working for TAP, TAP provided evidence that his direct deposit information was in his account in the employee portal as of August 5, 2019. TAP also noted that although Harris claimed to have completed the onboarding process in person while meeting with a TAP employee, he admitted during his deposition that he did not provide that employee his username or password. Thus, TAP contended that it would not have been possible for this employee to access the system on Harris's behalf.

TAP included a declaration from Skaggs, who stated that he was "personally involved in the design and implementation of TAP's electronic onboarding system," as well as the "hiring and onboarding" of Harris. Skaggs reiterated that access to the employee portal required an employee's unique username and password. The system also employed two-factor

authentication, so that the employee was texted a unique code at the time of an attempted login.[3] Skaggs pointed to documents showing that Harris used TAP's electronic system to consent to the background screening and then to accept the job offer to counter Harris's claim that he had never interacted with the online system at all.

Harris also submitted a supplemental brief. He pointed to Skaggs's deposition testimony stating that the arbitration agreement should bear an e-signature once approved by the employee and noted that TAP had not produced any copy of the arbitration agreement or employee handbook bearing Harris's name or electronic signature. TAP also failed to produce evidence of the emails sent to Harris that purportedly provided the necessary information to allow him to access the electronic portal. Moreover, the electronic correspondence history TAP did produce did not reflect that these emails were sent.

### D.     *Hearing and Ruling*

At the July 21, 2023 hearing, TAP's counsel cited the screenshot purporting to show August 5, 2019 electronic acknowledgment by Harris of TAP policies, including the arbitration agreement, stating "that's the evidence we have of electronic consent." The court asked whether TAP submitted the documents referred to by Skaggs "that would show or establish that the portal . . . digitally captured the signature saying that employee signed and dated it?" TAP's counsel acknowledged that "there's no document that has an e-signature on it," but argued that TAP had met the legal requirement by showing that Harris clicked the electronic acknowledgment button after reading through the arbitration agreement. In response, Harris's counsel pointed to Skaggs's testimony that if an employee acknowledged an agreement, it would be reflected in a signature on the document. The court agreed, stating that even if TAP was correct that no signature was required, it had not met its evidentiary burden to demonstrate that Harris agreed to arbitrate.

---

[3]     None of the earlier declarations submitted by TAP outlining the online system mentioned this feature.

The court issued a written ruling denying TAP's petition to compel arbitration.  Noting that it was TAP's burden to demonstrate an agreement by Harris to arbitrate, the court concluded that TAP's evidence "does not include an agreement to arbitrate signed by Plaintiff, or an electronic signature that can be attributed to Plaintiff."  Although TAP established "what would have occurred during the online onboarding process . . . none of the documents provided indicated that Plaintiff acknowledged the arbitration policy by checking a box.  Instead, the evidence showed records pertaining to people other than Plaintiff."  The court found that TAP's supplemental evidence did show that Harris "electronically signed up for direct deposit and to request time off both of which required Plaintiff to create a unique account and user password to access Defendants' electronic portal."  However, TAP did not provide "any evidence of any electronic signature acknowledging the arbitration provision which can be attributed to Plaintiff

The court also cited Skaggs's testimony that he did not know whether an arbitration agreement signed by Harris existed, but that "if an employee acknowledges the arbitration policy, the portal will digitally capture it at the bottom of the document . . . 'like a digital signature.'"  The court observed that "[s]uch a document is not submitted."  The court rejected TAP's arguments regarding inconsistencies between Harris's declaration and deposition testimony, noting that it was TAP's burden to establish that Harris signed an agreement to arbitrate, and "[e]vidence that Plaintiff had to have created a secure account on Defendants' portal to request direct deposit and time off does not establish Plaintiff's agreement to arbitrate."

TAP timely appealed pursuant to Code of Civil Procedure, section 1294, subdivision (a).[4]

## DISCUSSION

TAP asserts that the trial court incorrectly held that it failed to meet its burden of establishing the existence of a valid arbitration agreement. We find no error.

---

[4]     All undesignated statutory references are to the California Code of Civil Procedure.

## I.     Legal Principles

### A.     *Petition to Compel Arbitration*

The principles governing petitions to compel arbitration are well established. "California law strongly favors arbitration.  Through the comprehensive provisions of the California Arbitration Act ([ ] § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution."'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125, quoting *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)  But that policy "'"does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has not agreed to resolve by arbitration."'" (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1054 (*Espejo*), quoting *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.)

Under section 1281.2, a trial court must grant a motion or petition to compel arbitration "if it determines that an agreement to arbitrate the controversy exists," absent certain exceptions not relevant here.  The statute establishes "a summary proceeding" for resolving a petition to compel arbitration.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)  "[T]he trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Ibid.*)  "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; see also *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164–165 (*Gamboa*).)

### B.     *Standard of Review*

In general, we "review an order denying a petition to compel arbitration for abuse of discretion unless a pure question of law is presented. In that case, the order is reviewed de novo." (*Espejo, supra*, 246 Cal.App.4th at pp. 1056-1057, citing *Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505; see also *Gamboa, supra*, 72 Cal.App.5th at p. 166.)  Where the decision is based on a finding of fact, "'"we adopt a substantial evidence standard."'"

(*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066 (*Fabian*).)

However, where the decision "is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding is erroneous as a matter of law." (*Fabian, supra*, 42 Cal.App.5th at p. 1066, citing *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978-979; see also *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465 [where trier of fact concludes that the party with the burden of proof fails to carry the burden, it is "misleading" to characterize the standard of review as one of substantial evidence].) "'Specifically, the question becomes whether appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*Fabian, supra*, 42 Cal.App.5th at p. 1067.)[5] "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Ibid.*) We "view all factual matters most favorably to the prevailing party and in support of the judgment," and resolve all conflicts in favor of the respondent. (*Ibid.*)

## II.    Analysis

TAP contends the trial court erred first with the legal conclusion that a signature was required to establish consent to an arbitration agreement, and second with the factual finding that Harris never consented. We disagree with both points.  First, TAP contends that the trial court "misapplied the law" regarding electronic signatures to "undisputed facts establishing TAP [ ]'s secure electronic onboarding process."  TAP further asserts that the trial court reached the erroneous conclusion that an actual signature on the

---

[5]    We note that some of our sister courts have applied the substantial evidence standard in reviewing a trial court's conclusion that the petitioner did not meet its burden to establish an agreement to arbitration.  (See, e.g., *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545 ["Substantial evidence supports the trial court's conclusion that Marinidence failed to prove that Bannister signed (electronically) the arbitration agreement."]; *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966-967.) We need not resolve this issue here, as we would reach the same conclusion under either standard.

document was required to meet the statutory requirements for consent.  TAP argues that we should apply de novo review to this legal conclusion.  We reject TAP's contention that de novo review applies here, as we conclude the trial court made no such legal finding.

Civil Code section 1633.9, subdivision (a), governs the authentication of electronic signatures.  It provides that an electronic signature may be attributed to a person if "it was the act of the person."  (Civ. Code, § 1633.9, subd. (a).)  Further, "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  (*Ibid*.)  "For example, a party may establish that the electronic signature was 'the act of the person' by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions."  (*Bannister, supra*, 64 Cal.App.5th at p. 545, citing *Espejo, supra*, 246 Cal.App.4th at p. 1062; see also *Ruiz v. Moss Bros. Auto Group, Inc*. (2014) 232 Cal.App.4th 836, 844.)

The trial court correctly recognized this standard.  It did not find, as TAP suggests, that checking a box after reviewing a document could never legally satisfy the requirement for an electronic signature. As such, TAP has not demonstrated any legal error.

Instead, the court weighed the evidence and made the factual finding that TAP failed to establish that Harris consented to the arbitration agreement here.  TAP contends that the facts in this case were largely undisputed and that there was insufficient evidence to contradict TAP's showing that Harris consented.  However, the evidence on the material issue—whether Harris reviewed and agreed to the arbitration agreement using the electronic portal or by other means—*was* disputed.  TAP presented evidence of its general procedures allowing new employees access to its online portal, including emailing a user ID and registration code.  TAP also presented evidence, which the trial court credited, that Harris had used the portal to set up payment through direct deposit and later to request time off.  Additionally, TAP presented the screenshot showing policies marked

12

"acknowledged."  TAP argued that this evidence established that only Harris could have performed these tasks and that Harris therefore reviewed and agreed to the employee handbook and the arbitration agreement.

On the other hand, Harris testified consistently that he never saw, reviewed, or agreed to the handbook or arbitration agreement.  He testified that various TAP employees helped him complete his onboarding.  Harris also noted that the copies of the handbook and arbitration agreement produced by TAP contained blank signature lines and no markings indicating that he had read or acknowledged the documents.  Additionally, he relied on testimony by Skaggs, TAP's own designated person most knowledgeable, that if an employee consented to the arbitration agreement the system would affix an e-signature to the document.  The court was entitled to credit this evidence in concluding that TAP failed to meet its burden to establish consent to arbitrate.  TAP has not demonstrated that the evidence was uncontradicted or unimpeached, such that it would compel a finding in TAP's favor.

We are not persuaded otherwise by TAP's attempt to distance itself from Skaggs's testimony.  Skaggs's statement was not an "isolated" piece of testimony, as TAP suggests, but rather a statement by TAP's own designated witness on a central issue of discovery.  Further, while TAP now suggests that Skaggs "misspoke" during his deposition, the trial court was entitled to credit his testimony.

We also find this case distinguishable from *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373 (*Harris*).  As an initial matter, we note that the case involved a different plaintiff, Dwayne Harris, and thus TAP's contention that the unpublished portion "may be cited as law of the case" is not well taken.  (See, e.g., *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301 ["'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case'"].)  Moreover, in *Harris,* the employee admitted signing the acknowledgment of receipt for "*both* the Employee Handbook and the attached arbitration agreement."  (*Harris*, *supra*, at p. 383.)  Based on that evidence, Division Five of this district concluded that the plaintiff

"consented to arbitrate his claims when he began and continued working for TAP." (*Id*. at p. 381.) Here, by contrast, the court found Harris did not sign any part of the handbook or the arbitration agreement and credited his testimony that he never received or reviewed either document. Therefore, TAP did not meet its burden to establish that Harris gave his implied consent to arbitration.[6]

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Respondent is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

ZUKIN, P. J.

GARCIA UHRIG, J.[*]

---

[6]     In light of our conclusion, we need not reach TAP's alternative argument that the arbitration agreement was enforceable, and Harris could not establish it was unconscionable.

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.